## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL KIRCHER, III, | : | |
| | : | Civil Case No. 4:13-CV-02143 |
| Plaintiff | : | |
| | : | |
| v. | : | Judge Matthew W. Brann |
| | : | Magistrate Judge Thomas M. Blewitt |
| PENNSYLVANIA STATE | : | |
| POLICE, ET AL., | : | |
| Defendants | : | FILED ELECTRONICALLY |

## BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

KATHLEEN G. KANE
Attorney General

By:   *s/ Keli M. Neary*
KELI M. NEARY
Deputy Attorney General
Attorney ID 205178

JESSICA S. DAVIS
Deputy Attorney General
Attorney ID 94560

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 787-1180
Fax:    (717) 772-4526
kneary@attorneygeneral.gov

KENNETH L. JOEL
Chief Deputy Attorney General
Chief, Civil Litigation Section

Date: December 1, 2014

Counsel for Defendants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

PROCEDURAL HISTORY ................................................................7

STATEMENT OF FACTS ................................................................8

    First Encounter with Defendants ...................................................8

    Encounter with Nathan Ball ..........................................................9

    Second Encounter with Defendants..............................................10

    Taser Training.............................................................................16

QUESTIONS PRESENTED.............................................................19

ARGUMENT ..................................................................................20

    I.    KIRCHER'S COUNT I AND COUNT III CLAIMS OF FAILURE
            TO TRAIN, SUPERVISE, AND DISCIPLINE, AS WELL AS
            POLICY VOID CLAIMS, ALL FAIL AS A MATTER OF LAW
            AGAINST THE NAMED DEFENDANTS.......................................22

          A.    Failure to train, supervisor, or discipline claims cannot stand
                 against the state or its employees..............................................22

          B.    Defendants are not supervisors ..................................................23

    II.    IT WAS REASONABLE FOR CORPORAL FARABAUGH TO USE
            HIS TASER SEVEN TIMES AND FOR TROOPER MILLER TO
            USE HIS TASER TEN TIMES TO AFFECT KIRCHER'S ARREST
            WHERE KIRCHER ACTIVELY REFUSED TO OBEY THEIR
            REPEATED COMMANDS TO STOP HIS CAR, GET OUT, AND
            SURRENDER TO THE TROOPERS FOLLOWING A POLICE
            PURSUIT ..................................................................................25

    III.    CORPORAL FARABAUGH AND TROOPER MILLER ARE
            ENTITLED TO QUALIFIED IMMUNITY BECAUSE THERE IS
            NO CLEARLY ESTABLISHED LAW BARRING AN OFFICER

i

FROM USING HIS TASER A SPECIFIC NUMBER OF TIMES TO GAIN A SUBJECT'S COMPLIANCE ...............................................33

IV.   SOVEREIGN IMMUNITY BARS THE STATE LAW CLAIMS RAISED IN COUNTS IV AND V .......................................................36

CONCLUSION ........................................................................................39

CERTIFICATION OF WORD COUNT ...............................................40

CERTIFICATE OF SERVICE ............................................................41

# TABLE OF AUTHORITIES

**Cases**

*Alabama v. Pugh*,
  438 U.S. 781 (1978)....................................................................................23

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)....................................................................................21

*Ansell v. Ross Township*, No. 10–1402,
  419 Fed. App'x 209 (3d Cir. 2011) .............................................................25

*Ashcroft v. al-Kidd*,
  131 S.Ct. 2074 (2011)..................................................................................34

*Bello v. Lebanon City Police Dep't*, No. 1:11-CV-0639,
  2013 WL 53981 (M.D. Pa. Jan. 3, 2013) .....................................................34

*Bornstad v. Honey Brook Township*, No. 05–4534,
  211 Fed. App'x 118 (3d Cir. 2007) ..............................................................26

*Boyden v. Twp. of Upper Darby*,
  5 F.Supp.3d 731 (E.D.Pa. 2014)..................................................................34

*Brown v. Burghart*, No. 10-3374,
  2012 WL 1900603 (E.D.Pa. May 25, 2012)..................................................35

*Brown v. Cwynar*,
  484 Fed. App'x 676 (3d Cir 2012) ........................................... 31, 33, 34, 35

*Brumfield v. Sanders,*
  232 F.3d 376 (3d Cir.2000) ..........................................................................37

*Carswell v. Borough of Homestead*,
  381 F.3d 235 (3d Cir. 2004) ........................................................................26

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).....................................................................................20

*cf. Giles v. Kearney*,
  571 F.3d 318 (3d Cir. 2009) ........................................................................34

*City of Canton, Ohio v. Harris*,
    489 U.S. 378 (1989)...................................................................22

*Dodds v. Richardson*,
    614 F.3d 1185 (10th Cir. 2010) ..................................................22

*Draper v. Reynolds,*
    369 F.3d 1270 (11th Cir. 2004) ..................................................34

*Drummer v. O'Carroll*,
    991 F.2d 64 (3d Cir. 1993) .........................................................24

*Edelman v. Jordan*,
    415 U.S. 651 (1974)....................................................................23

*Gorman v. Warwick Tp.*, No. 10-CV-6760,
    2012 WL 1439076 (E.D.Pa. April 26, 2012) ...............................32

*Graham v. Connor*,
    490 U.S. 386 (1989)........................................................... 25, 26

*Hampton v. Holmesburg Prison Officials*,
    546 F.2d 1077 (3d Cir. 1976) .....................................................24

*Hankins v. Temple University,*
    829 F.2d 437 (3d Cir. 1987) .......................................................21

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)....................................................................33

*Hinkley v. Pennsylvania Board of Probation and Parole*, No. 3:11-cv-0525, Report
    & Recommendation,
    2012 WL 4450888 (M.D. Pa. August 16, 2012) ..........................23

*Hinton v. City of Elwood*,
    997 F.2d 774 (10th Cir. 1993) ....................................................34

*Hoyt v. Cooks*,
    672 F.3d 972 (11th Cir. 2012) ....................................................35

*Jones v. City of Phila.*,
    890 A.2d 1188 (Pa. Commw. 2006).............................................36

*La Frankie v. Miklich*,
618 A.2d 1145 (Pa. Commw. 1992) ....................................................... 37, 38

*Lamont v. New Jersey*,
637 F.3d 177 (3d Cir. 2011) ...........................................................25

*Monell v. New York City Dep't of Social Serv.*,
436 U.S. 658 (1978)...............................................................22

*Moore v. Cuyler*,
538 A.2d 111 (Pa. Commw. 1988), appeal dismissed, 567 A.2d 1040 (Pa. 1990) ......................................................................................37

*Nykiel v. Borough of Sharpsburg*,
778 F. Supp. 2d 573 (W.D. Pa. 2011) .......................................35

*Pa. State Police v. Klimek*,
839 A.2d 1173 (Pa. Commw. Ct. 2003) ....................................23

*Pearson v. Callahan*,
555 U.S. 223 (2009)...............................................................33

*Pickering v. Sacavage*,
642 A.2d 555 (Pa. Commw. 1994)............................................38

*Rizzo v. Goode*,
423 U.S. 362 (1976)...............................................................24

*Rode v. Dellarciprete*,
845 F.2d 1195 (3d Cir. 1988) .............................................. 23, 24

*Russo v. City of Cincinnati*,
953 F.2d 1036 (6th Cir. 1992) .................................................34

*Saucier v. Katz*,
533 U.S. 194 (2001)...............................................................33

Sharrar v. Felsing,
128 F.3d 810 (3d Cir. 1997) .............................................. 25, 26

*Will v. Michigan Dept. of State Police*,
491 U.S. 58 (1989)................................................................22

*Williams v. Borough of West Chester, Pennsylvania*,
    891 F.2d 458 (3d Cir. 1989) ................................................................. 20, 21

*Wisneski v. Denning*, No. 12-864,
    2014 WL 1758118 (W.D. Pa. April 30, 2014) ............................................31

*Yakowicz v. McDermott*,
    548 A.2d 1330 (Pa. Commw. 1988) appeal denied, 565 A.2d 1168 (Pa.
    1989) ...........................................................................................................37

**Statutes**

1 Pa.C.S. § 2310 .............................................................................................. 37, 38

42 Pa. C.S. § 8521(b) ...........................................................................................23

42 Pa. C.S. § 8522 .................................................................................................23

42 U.S.C. § 1983 ....................................................................................................7

42 U.S.C.A. § 1983 ...............................................................................................22

**Rules**

Fed.R.Civ.P. 56(c) .................................................................................................20

**PROCEDURAL HISTORY**

This is an action brought pursuant to 42 U.S.C. § 1983 by Plaintiff Paul H. Kircher, III ("Kircher") against Defendants Pennsylvania State Police ("PSP"), Corporal Eric Farabaugh ("Corporal Farabaugh"), and Trooper Dennis Miller ("Trooper Miller") (collectively, "troopers"). (Doc. 1). The Complaint raises five counts, all related to a police pursuit and Kircher's subsequent arrest on September 14, 2011. (Doc. 2). Count I alleges that PSP failed to develop and enforce proper policies regarding excessive force and the use of a Taser. (Doc. 2, ¶¶25-40).  Count II alleges Corporal Farabaugh and Trooper Miller violated Kircher's Fourth Amendment right by using excessive force to affect his arrest. (Doc. 2, ¶¶41-49). Count III alleges the PSP, Corporal Farabaugh and Trooper Miller are responsible for failure to train on excessive force and the proper use of Tasers. (Doc. 2, ¶¶50-65). Count IV alleges Corporal Farabaugh and Trooper Miller violated Kircher's right to be free from excessive force under Article I, §8 of the Pennsylvania Constitution. (Doc. 2, ¶¶66-71). Count V raises state law claims of assault and battery against Corporal Farabaugh and Trooper Miller. (Doc. 2, ¶¶72-77).

On November 17, 2014, Defendants filed a motion for summary judgment, statement of material and undisputed facts, and corresponding exhibits. (Docs.34-36). Pursuant to LR 7.5 and 56.1, Defendants now file this brief in support of their motion.

## STATEMENT OF FACTS

Kircher is an adult male, who resides in Gibbstown, New Jersey. Ex.1, Complaint, ¶1; Ex. 2, Kircher Dep. 10:21-22. Around September 10 or 11, 2011, Kircher was unhappy with life and decided to take a road trip to California to visit a cousin. Ex. 2, Kircher Dep. 104:3-5, 9-10, 106:7-11, 14-16, 23; Ex. 5, October 10, 2012 Criminal Trial Transcript (Trial Trans.) 82:7-20. Kircher traveled via Interstate 80 west. Ex. 5, Trial Trans. 83:9. On September 13, 2011 and into the morning hours of September 14, 2011, Kircher got off I-80 to make a pit stop in Pennsylvania and got lost. Ex. 5, Trial Trans. 83:14-15. It was foggy so Kircher was driving slower than usual to try to read road signs. Ex. 5, Trial Trans. 83:16-19, 84:8-11.

### First Encounter with Defendants

It was approximately 12:30 in the morning on September 14, 2011 when Corporal Farabaugh and Trooper Miller first encountered Kircher. Ex. 5, Trial Trans. 50:13-15, 84:16-85:14. The troopers were suspicious when they noticed Kircher driving slower than that the speed limit in an area where there had recently been burglaries, so they stopped to question him. Ex. 4, Miller Dep. 56:1-6, 11-15; 57:3-7, 9-20; Ex. 5, Trial Trans. 50:13-15, 83:16-19, 84:8-11, 16-85:14.

Kircher explained to the troopers that he was from New Jersey and on his way to California and that he was lost. Ex. 2, Kircher Dep. 116:11-17; Ex. 4,

8

Miller Dep. 58:3-25; Ex. 5, Trial Trans. 85:2-7. Trooper Miller ran Kircher's license through the PennDOT database and determined that there were no outstanding warrants for Kircher, the car Kircher was driving was legally his and then informed Kircher that he could be on his way.  Ex. 4, Miller Dep. 57:21-58:13; Ex. 5, Trial Trans. 86:2-20. Kircher continued to travel and got lost again. Ex. 2, Kircher Dep. 117:16-17; Ex. 5, Trial Trans. 86:21-24.

At some point after his first encounter with the troopers, Kircher pulled over toward the side of the road, dimmed his lights and listened to the radio with the intention of listening for a traffic report or something to help figure out where he was.  Ex. 2, Kircher Dep. 123:7-13; Ex. 5, Trial Trans. 87:2-9.

**Encounter with Nathan Ball**

Nathan Ball ("Ball") was an Assistant Fire Chief for the Sinnemahoning Fire Department.   Ex. 6, Ball Dep. 11:9-13. Around 2:30 in the morning, Ball was driving east on route 120 and drove past Kircher's vehicle, which was parked in the west bound lane of route 120. Ball noticed Kircher did not have his headlights on.  Ex. 6, Ball Dep. 14:14-16. Ball went a quarter-mile down the road and turned around.  He then came back up behind Kircher and put his four ways on and then got out of the vehicle to see if Kircher was okay.  Ex. 6, Ball Dep. 14:16-21.

When Ball attempted to check on Kircher, Kircher proceeded to drive up the road without his headlights on. Ex. 6, Ball Dep. 14:19-21. As Kircher started

9

driving away, Ball called into Elk County dispatch center to report that Kircher was driving without his lights on. Ex. 6, Ball Dep. 19:14-16, 25. Ball remained behind Kircher and eventually activated his emergency fireman's lights to signal to the potential hazard to oncoming traffic. Ex. 6, Ball Dep.17:7-24, 19:6-9. Ball and Kircher traveled another two miles before the state police caught up with them, coming from the opposite direction.  Ex. 6, Ball Dep. pg. 21:5-8; Ex. 7, Martz Dec., Attach. A, Mobile Video Recording ("MVR") 2:14-23.

### <u>Second Encounter with Defendants</u>

Corporal Farabaugh and Trooper Miller were dispatched to SR 120 west for a vehicle driving with no lights on.  Ex. 7, Martz Dec., Attach. A, MVR 2:14-2:26; Ex. 8, Incident Report No. F03-1111625 p. 4; Ex. 9, Transcript of Telephone Communications 6:24-25. The patrol car's emergency lights were activated as the troopers drove up to Kircher and notice Kircher's lights were not on. Ex. 7, Martz Dec., Attach. A, MVR 2:10-2:26. As the troopers began to get out of their car, Kircher fled in reverse.  Ex. 2, Kircher Dep. 124:1-9; Ex. 6, Ball Dep. 22:16-20; Ex. 7, Martz Dec., Attach. A, MVR 2:23-2:27. Trooper Miller continued to approach Kircher on foot instructing Kircher to stop his car but Kircher refused and continued to back his vehicle away. Ex. 7, Martz Dec., Attach. A, MVR 2:30-

10

2:53. Corporal Farabaugh attempted to PIT[1] Kircher's vehicle but Kircher continued fleeing east at approximately twenty miles per hour. Ex. 2, Kircher Dep. 124:1-14; Ex. 5, Trial Trans. 42:24-43:1-3; Ex. 6, Martz Dec. Attach. A, MVR 2:54-3:22; Ex. 8, Incident Report p. 4.

Over the next fourteen minutes, Kircher continued to flee, sometimes swerving across the double yellow line, until stopping at the intersection of 120 and 555. Ex. 5, Trial Trans. 32:12-17; Ex. 7, Martz Dec., Attach. A, MVR 3:22-17:16; Ex. 8, Incident Report p. 4. While pursuing Kircher, the troopers used the loudspeaker to give Kircher commands including "stop the car" and "get out of the car," which Kircher did not obey.  Ex. 2, Kircher Dep. 132:13-16; Ex. 5, Trial Trans. 32:19-25; Ex. 7, Martz Dec., Attach. A, MVR 16:00-16:17, 17:48-19:30; Ex. 12, Radio Trans. 15:7-10.

Once Kircher was stopped at the intersection, the troopers exited the patrol vehicle and again instructed Kircher to "get out of the car."  Ex. 2, Kircher Dep. 133:12-23; Ex. 7, Martz Dec., Attach. A, MVR 17:16. At this point, Kircher recognized them as the same troopers he met with earlier that evening but he did not get out of the car. Ex. 2, Kircher Dep. 133:24-134:1-2. Instead, Kircher continued to drive his car down route 555 into the Driftwood Borough at which

---

[1] A PIT maneuver is "a precision immobilization technique where you use the patrol car to try to spin the vehicle out to disorient the driver." Ex. 5, Trial Trans. 31:7-9.

time a second PIT maneuver was attempted but Kircher continued to flee.  Ex. 6, Ball Dep. 23:17-19; Ex. 7, Martz Dec. Attach. A, MVR 25:20-43; Ex. 8, Incident Report p. 4. Finally, a third PIT maneuver was executed and the troopers were successful at pinning Kircher's vehicle against an embankment.  Ex. 3, Farabaugh Dep. 56:6-25-57:1-24; Ex. 5, Trial Trans. 33:12-23; Ex. 7, Martz Dec., Attach. A, MVR 2:54-3:22; Ex. 8, Incident Report p. 4. Yet, even after his vehicle was pinned, Kircher continued to try to use his car to get away.  Ex. 3, Farabaugh Dep. 65:23-66:1; Ex. 5, Trial Trans. 33:12-23, 34:24-35:12, 93:22; Ex. 7, Martz Dec., Attach. A, MVR 24:43-26:12; Ex. 8, Incident Report p. 4.

As the troopers exited their patrol vehicle, they again gave Kircher commands to open the door and get out, which he ignored.  Ex. 2, Kircher Dep. 135:4-21; Ex. 7, Martz Dec., Attach. A, MVR 26:20; Ex. 8, Incident Report p. 4. Kircher was stepping on the accelerator[2] trying to break his car free from the patrol car. Ex. 3, Farabaugh Dep. 65:16-66:1; 66:10-17; 94;17-18; 137:19-22; Ex. 5, Trial Trans. 33:12-23, 34:24-35:12, 93:22; Ex. 7, Martz Dec., Attach. A, MVR 26:00-26:12; Ex. 8, Incident Report p. 4.

When Kircher failed to comply with commands to exit the vehicle, Corporal Farabaugh broke Kircher's passenger side window and deployed his Taser in probe

---

[2] While Kircher was in his vehicle, Trooper Miller perceived the vehicle as a deadly weapon. Ex. 4, Miller Dep. 46:7-25; Ex. 7, Martz Dec., Attach. A, MVR 26:40-27:00 (discussion between troopers regarding when it would be safe for Trooper Miller to cross in front of Kircher's pinned vehicle.).

mode.[3] Ex. 3, Farabaugh Dep. 63:12-14; Ex. 4, Miller Dep. 44:4-6; Ex. 5, Trial Trans. 33:12-34:5; Ex. 7, Martz Dec., Attach. A, MVR 26:23-33. Corporal Farabaugh deployed his Taser immediately after breaking out the window because Kircher was still trying to drive away at that point. Ex. 3, Farabaugh Dep. 65:16-25-66:1; Ex. 5, Trial Trans. 33:12-34:5; Ex. 7, Martz Dev., Attach. A, MVR 26:36. After giving Kircher nearly another minute to get out of the car on his own, Trooper Miller ran around the car and broke out the drivers' window to try and extract Kircher. Ex. 4, Miller Dep. 43:24-44:1; Ex. 7, Martz Dec., Attach. A, MVR 27:15.

As soon as Corporal Farabaugh's first Taser cycle was completed, Corporal Farabaugh observed Kircher break the wire leads off and believed that Taser deployment had no effect on Kircher. Ex. 5, Trial Trans. 34:1-5; Ex. 8, Incident Report pg. 4. Kircher continued to resist arrest by shouting, "Back off me!  Get away from me! Back off me!  Back off me!"  Ex. 3, Farabaugh Dep. 67: 2-3; Ex. 5, Trial Trans. 51:19-20; Ex. 7, Martz Dec., Attach. A, MVR 27:43. Kircher was

---

[3] The PSP currently distributes the Taser X26 to its troopers. Ex. 3, Farabaugh Dep. 25:7-9. A Taser creates an involuntary muscle reaction, causing the subject's muscles to tighten up and causing the subject to stop what he is doing so you can gain control of him. Ex. 10, Mall Dep. 35:9-17; Ex. 3, Farabaugh Dep. 21:4-10. The Taser X26 can be used in probe mode or drive stun mode. Ex. 3, Farabaugh Dep. 54:17-20. When the Taser is activated in probe mode, the Taser has a cartridge on the end of it that has two darts in it attached to wires. Whenever you pull the trigger on the Taser, it dispenses the two darts and they stick into whatever they strike and it emits an electrical shock for five seconds. Ex. 5, Trial Trans. 34:8-13; Ex. 3, Farabaugh Dep. 54:21-55:9.

warned that he would be tased if he did not comply, but he ignored commands to get out of the car.  Ex. 7, Martz Dec., Attach. A, MVR 32:01. After the initial probe deployments, both troopers continued to periodically deploy their Tasers in drive stun mode,[4] attempting to use pain compliance to gain control of Kircher's hands and get him out of the vehicle.

Throughout the fourteen minute struggle, Trooper Miller deployed his Taser ten times, twice in the probe mode and eight times in the drive stun mode. Ex. 4, Miller Dep. 122:20-23; deposition exhibit, Miller 1 - Taser Use Report for Trooper Dennis Miller; Ex. 7, Martz Dec., Attach. A, MVR 26:23-39:09; Ex. 8, Incident Report pg. 4. Corporal Farabaugh deployed his Taser seven times, twice in probe mode and five times in drive stun mode.  Ex. 3, Farabaugh Dep. 55:23; 82:14-16; Ex. 4, Miller Dep., deposition exhibit Miller 2 - Taser Use Report for Corporal Eric Farabaugh. Corporal Farabaugh's Taser deployments in probe mode were deployed in the direction of the area between Kircher's shoulder and waist on his right side. Ex. 3, Farabaugh Dep. 82:10-13. In total, four darts from Corporal Farabaugh's Taser penetrated Kircher's skin. Ex. 3, Farabaugh Dep. 111:2-6. Corporal Farabaugh's Taser deployments in drive stun mode were applied to Kircher's arm and hand. Ex. 3, Farabaugh Dep. 109:12-13, 19-20. Trooper Miller

---

[4] When the Taser is activated in drive stun mode, no probes are fired. The Taser is touched against a subject's body. Ex. 3, Farabaugh Dep. 55:10-16. In stun mode, the only area of the subject that is affected by the Taser is the area touched by the Taser. Ex. 4, Miller Dep. 66:6-12.

also punched Kircher on his hands, using pain compliance to get him to release the steering wheel and get him out of the car. Ex. 4, Miller Dep. p. 78:17-79:21.

It was important to get Kircher out of the vehicle because it was unknown to the troopers whether Kircher had any weapons in the vehicle or on his person. Ex. 5, Trial Trans. 50:2-4, 53:13-19. This concern is further demonstrated when Corporal Farabaugh can be heard on the MVR exclaiming that Kircher was reaching for his pockets at a time when the troopers still did not have control of his hands. Ex. 5, Trial Trans. 53:25-54:3; Ex. 7, Martz Dec., Attach. A, MVR 34:20. Corporal Farabaugh was concerned because he did not know if Kircher had any weapons in his pockets. *Id*.

Kircher resisted every attempt to get him out of the vehicle, stating he either used his hands to block glass from hitting him or kept his hands on the steering wheel, but never expressed an intention to comply with the troopers' commands to exit the vehicle. Ex. 2, Kircher Dep. 135:14-17; Ex. 5, Trial Trans. 35:4; 37:4-5. Based upon Kircher's actions, Trooper Miller later expressed his belief that Kircher could have been under the influence of alcohol or drugs, specifically, bath salts. Ex. 4, Miller Dep. 31:21-23; 1010:10-11; 119:13.

No tasings occurred after Kircher was removed from his vehicle. Ex. 3 Farabaugh Dep. 152:22-25-153:1; Ex. 4, Miller Dep. 81:22-25. Once in custody,

Kircher was transported to Elk County Regional for medical treatment. Ex. 8, Incident Report pg. 4; Ex. 10, Mall Dep. 40:3-6.

On September 16, 2011, Kircher was charged with aggravated assault, driving under the influence of alcohol or controlled substance, fleeing or attempting to elude police officer, careless driving, reckless driving, periods for requiring lighted lamps, recklessly endangering another person, resisting arrest or other law enforcement.  Ex. 8, Incident Report, Criminal Complaint, DEF000363-DEF000370; Ex. 11, Criminal Docket. The charges of aggravated assault and DUI were later withdrawn. Ex. 8, Incident Report, Letter from DA, DEF000396; Ex. 11, Criminal Docket.

On October 10, 2012, Kircher was found guilty by a jury of fleeing or attempting to elude police officers, resisting arrest or other law enforcement and the court found Kircher guilty of the summary offense of careless driving.  Ex. 5, Trial Trans. 144:20-25-145:1; Ex. 11, Criminal Docket.

### **Taser Training**

The Taser is non-deadly tool on the PSP force array as delineated in the Use of Force Policy, Field Regulation 4-1. Ex. 10, Mall Dep. 30:23; 32:7-10; 68:15-19; 69:10-13; 70:6-13. PSP policy permits the use of a Taser whenever the trooper feels it is needed depending on the totality of what the trooper is dealing with. Ex. 10, Mall Dep. 32:7-10. Corporal Farabaugh and Trooper Miller have been trained

to use a Taser either to incapacitate a suspect or administer pain to gain compliance.  Ex. 4, Miller Dep. 25:12.

The PSP trained troopers on Tasers when they were issued as well as updated instruction annually at mandatory in-service training. Ex. 10, Mall Dep. 29:23-25-30:1-3; 70:14-24; 71:8-17; Ex. 3, Farabaugh Dep. 17:3-19:1. The PSP instructed troopers to use Tasers on subjects who are not complying with orders. Ex. 10, Mall Dep. 30:20-22. Troopers are trained that, in using a Taser, the trooper should get the subject secured as soon as possible once he gains compliance over the subject. Ex. 10, Mall Dep. 31:5-7. Troopers are trained to aim the Taser toward the center mass of a subject to avoid genital or facial areas. Ex. 10, Mall Dep. 34:14-16. Troopers are instructed that when using a Taser the closer you are to a subject, the better because Taser probes spread and you want to avoid the probes landing in a sensitive or dangerous area. Ex. 10, Mall Dep. 34:18-23. Troopers are instructed on the dangers of using a Taser, including: Troopers are instructed to be aware of using a Taser on a subject that is standing on a bridge, culvert or something of that nature because the subject could possibly  fall. Ex., Mall Dep. 34:3-10; Farabaugh Dep. 20:13-16. Troopers are instructed to avoid using a Taser on a subject that could fall into water and drown. Ex. 3, Farabaugh Dep. 20:13-16. Troopers are instructed on the medical risks associated with administering a Taser on a pregnant woman, a small child or an elderly subject. Ex. 3, Farabaugh Dep.

17

20:17-20. Troopers are not instructed on how many times they are permitted to use a Taser on a subject during an incident or if there are dangers associated with multiple tasings. Ex. 3, Farabaugh Dep. 20:23-21:3, 21:16-21, 31:24-31:2; Ex. 4, Miller Dep. 21:18-23; Ex. 10, Mall Dep. 35:1-4, 71:24-72:5. Troopers are instructed to seek medical attention for a subject who has been exposed to multiple Tasers at one time or a long deployment of one Taser. Ex. 3, Farabaugh Dep. 31:20-23.

**QUESTIONS PRESENTED**

I.   **DO KIRCHER'S COUNT I AND COUNT III CLAIMS OF FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE, AS WELL AS POLICY VOID CLAIMS, FAIL AS A MATTER OF LAW AGAINST THE NAMED DEFENDANTS?**

   *Suggested Answer: Yes.*

II.  **WAS IT REASONABLE FOR CORPORAL FARABAUGH TO USE HIS TASER SEVEN TIMES AND FOR TROOPER MILLER TO USE HIS TASER TEN TIMES TO AFFECT KIRCHER'S ARREST WHERE KIRCHER ACTIVELY REFUSED TO OBEY THEIR REPEATED COMMANDS TO STOP HIS CAR, GET OUT, AND SURRENDER TO THE TROOPERS FOLLOWING A POLICE PURSUIT?**

   *Suggested Answer: Yes.*

III. **ARE CORPORAL FARABAUGH AND TROOPER MILLER ENTITLED TO QUALIFIED IMMUNITY BECAUSE THERE IS NO CLEARLY ESTABLISHED LAW BARRING AN OFFICER FROM USING HIS TASER A SPECIFIC NUMBER OF TIMES TO GAIN A SUBJECT'S COMPLIANCE?**

   *Suggested Answer: Yes.*

IV.  **DOES SOVEREIGN IMMUNITY BAR THE STATE LAW CLAIMS RAISED IN COUNTS IV AND V?**

   *Suggested Answer: Yes.*

# ARGUMENT

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any [supporting a motion for such relief], show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In interpreting this rule in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), the Supreme Court held that the rule's "plain language . . . mandates the entry of summary judgment . . . upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, at 322. (emphasis added).

The Third Circuit has addressed the standards to determine whether a non-moving party has adduced sufficient evidence, either direct or circumstantial, to defeat a motion for summary judgment in *Williams v. Borough of West Chester, Pennsylvania*, 891 F.2d 458, 459 (3d Cir. 1989) and stated:

> [S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party.
> [The summary judgment] standard mirrors the standard for a directed verdict…In essence . . . the inquiry under each [standard] is the same:  whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Williams*, 891 F.2d at 460, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Thus, even though the right to a jury trial is implicated by a claim, a non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. The failure of the non-moving party to produce such affirmative evidence to create issues in dispute material to the claims presented should result in the grant in judgment in favor of the moving party. *Hankins v. Temple University,* 829 F.2d 437, 440 (3d Cir. 1987). Moreover, the Supreme Court has said that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-248.

For the reasons articulated below, there are no genuine issues of any material fact in this case and the Defendants are entitled to judgment in their favor on all counts of the Complaint.

I.    **KIRCHER'S COUNT I AND COUNT III CLAIMS OF FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE, AS WELL AS POLICY VOID CLAIMS, ALL FAIL AS A MATTER OF LAW AGAINST THE NAMED DEFENDANTS.**

Counts I and III both appear to be failure to train, failure to supervise, and failure to discipline, as well as policy void claims. These claims fail as a matter of law for the two reasons discussed below.

A.    **Failure to train, supervisor, or discipline claims cannot stand against the state or its employees.**

While a municipality can be held liable for failing to adequately train its employees, a state cannot. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). *See also Dodds v. Richardson*, 614 F.3d 1185, 1209 (10th Cir. 2010)("[A] *municipality* can be held liable for failing to adequately train its employees." (emphasis added)). Section 1983 actions cannot be sustained against states because "neither a State, nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71(1989) (Noting that this principle was not altered by its holding in *Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658 (1978), where it held that a municipality is a person under §1983.). *See also* 42 U.S.C.A. § 1983 (Section 1983 provides for a cause of action against "persons.").

Furthermore, the Eleventh Amendment bars "suits against a state, a state agency, and state employees acting within their official capacities from suits in

22

federal court unless Congress has specifically abrogated the state's immunity or the state has waived its own immunity." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Alabama v. Pugh*, 438 U.S. 781, 781-82 (1978)(*per curiam*). The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment, except in nine areas that are not pertinent to this suit. 42 Pa. C.S. §§ 8521(b) & 8522. *Pa. State Police v. Klimek,* 839 A.2d 1173, 1174 n. 1 (Pa. Commw. Ct. 2003) (The PSP is a Commonwealth party that enjoys sovereign immunity). *See also Hinkley v. Pennsylvania Board of Probation and Parole*, No. 3:11-cv-0525, Report & Recommendation, 2012 WL 4450888 at *2 (M.D. Pa. August 16, 2012).

For these reasons, Kircher's failure to train claims against the PSP and the Defendant troopers in their official capacities fail as a matter of law. Therefore, the Defendants are entitled to judgment in their favor on Counts I and III.

### B.    Defendants are not supervisors.

Kircher's policy void claims against Corporal Farabaugh and Trooper Miller in their individual capacities also fail as a matter of law. Kircher specified that Count III was brought pursuant to 42 U.S.C. § 1983 and such actions must be based on a defendant's personal involvement in the alleged wrongdoing. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal liability under § 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.

23

*See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976); *Drummer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Rather, each defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Kircher's claims are based. *Rode*, 845 F.2d at 1207.

It is undisputed that, at the time of the incident, both officers were patrol troopers. Ex. 1, Complaint, ¶4, Ex. 3, Farabaugh Dep. 15:8-16, Ex. 4, Miller Dep. 7:1. There is no evidence in the record that either trooper had any role in the development, implementation or enforcement of PSP policies, especially those in regards to using force. Moreover, there is no record evidence that either trooper had any policy-making authority whatsoever.

Since § 1983 liability requires personal involvement and the Defendant troopers did not have any personal involvement in policy-making or policy enforcement at the PS, they cannot be held liable for failing to "properly develop, implement and enforce policies, protocols, procedures and customs." Doc. 1, Complaint, ¶61. Therefore, the Defendant troopers are entitled to judgment in their favor on the policy void claims brought against them in their individual capacities.

## II.   IT WAS REASONABLE FOR CORPORAL FARABAUGH TO USE HIS TASER SEVEN TIMES AND FOR TROOPER MILLER TO USE HIS TASER TEN TIMES TO AFFECT KIRCHER'S ARREST WHERE KIRCHER ACTIVELY REFUSED TO OBEY THEIR REPEATED COMMANDS TO STOP HIS CAR, GET OUT, AND SURRENDER TO THE TROOPERS FOLLOWING A POLICE PURSUIT.

To prevail on an excessive force claim, a plaintiff must show that a seizure occurred and that the seizure "was unreasonable under the circumstances." *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011). The determination of whether the force used to effect a particular seizure is "reasonable" requires careful examination of the facts and circumstances of that particular case, including "the severity of crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, the possibility that the suspect may be armed, whether the action takes place in the context of effecting an arrest, and the number of persons with whom the police officers must contend at one time. *Ansell v. Ross Township,* No. 10–1402, 419 Fed. App'x 209, 213 (3d Cir. 2011); *Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir. 1997). Through it all, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in

circumstances that are often tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation." *Bornstad v. Honey Brook Township,* No. 05–4534, 211 Fed. App'x 118, 124 (3d Cir. 2007) (quoting *Graham,* 490 U.S. at 396–397)). "Significantly, the Supreme Court has cautioned that in applying the objective reasonableness test, 'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' is constitutionally unreasonable." *Sharrar,* 128 F.3d at 821 (quoting *Graham,* 490 U.S. at 396). Reasonableness is evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004).

The parties do not dispute that Kircher was seized, but whether Corporal Farabaugh's use of his Taser seven times and Trooper Miller's use of his Taser ten times was reasonable under the circumstances. Based upon the undisputed record evidence, the troopers' actions were reasonable in this case.

The undisputed record shows that the troopers possessed the following knowledge at the time their Tasers were deployed:

(1)     They were dispatched to respond to a call of a vehicle traveling west on SR 120 without lights on. Ex. 7, Martz Dec., Attach. A, MVR 2:14-2:26; Ex. 8, Incident Report No. F03-1111625 p. 4; Ex. 9, Transcript of Telephone Communications 6:24-25.

26

(2)     After locating the vehicle and approaching with the emergency lights activated, the operator fled in reverse. Ex. 2, Kircher Dep. 124:1-9; Ex. 6, Ball Dep. 22:16-20; Ex. 7, Martz Dec., Attach. A, MVR 2:23-2:27.

(3)     A PIT maneuver was attempted and the vehicle was spun around and continued fleeing east at approximately 20 miles per hour. Ex. 2, Kircher Dep. 124:1-14; Ex. 5, Trial Trans. 42:24-43:1-3; Ex. 6, Martz Dec. Attach. A, MVR 2:54-3:22; Ex. 8, Incident Report p. 4.

(4)     Kircher continued to flee and swerve from one lane to the next for approximately fourteen minutes until stopping at the intersection of SR 120 and 555. Ex. 5, Trial Trans. 32:12-17; Ex. 7, Martz Dec., Attach. A, MVR 3:22-17:16; Ex. 8, Incident Report p. 4.

(5)     While pursuing Kircher's vehicle, the troopers used the loudspeaker to give Kircher commands, including "stop the car" and "get out of the car," which Kircher ignored. Ex. 2, Kircher Dep. 132:13-16; Ex. 5, Trial Trans. 32:19-25; Ex. 7, Martz Dec., Attach. A, MVR 16:00-16:17, 17:48-19:30; Ex. 12, Radio Trans. 15:7-10.

(6)     The vehicle turned onto SR 555 at which time a second PIT maneuver was attempted. Ex. 6, Ball Dep. 23:17-19; Ex. 7, Martz Dec. Attach. A, MVR 25:20; Ex. 8, Incident Report p. 4.

27

(7)     The vehicle was spun around and fled in reverse for approximately 25 yards before stopping. Ex. 7, Martz Dec., Attach. A, MVR 25:30-25:43; Ex. 8, Incident Report p. 4.

(8)     A third PIT maneuver was attempted and was successful in pinning the vehicle against an embankment. Ex. 3, Farabaugh Dep. 56:6-25-57:1-24; Ex. 5, Trial Trans. 33:12-23; Ex. 7, Martz Dec., Attach. A, MVR 2:54-3:22; Ex. 8, Incident Report p. 4.

(9)     Kircher tried to free his vehicle from the entrapment. Ex. 3, Farabaugh Dep. 65:16-66:1; 66:10-17; 94;17-18; 137:19-22; Ex. 5, Trial Trans. 33:12-23, 34:24-35:12, 93:22; Ex. 7, Martz Dec., Attach. A, MVR 26:00-26:12; Ex. 8, Incident Report p. 4.

(10)    As the troopers exited their patrol vehicle, they again gave Kircher commands to open the door and exit his vehicle, which he ignored. Ex. 2, Kircher Dep. 135:4-21; Ex. 7, Martz Dec., Attach. A, MVR 26:20; Ex. 8, Incident Report p. 4.

(11)    Kircher was armed with his vehicle as a deadly weapon. Ex. 4 Miller Dep. 46:7-25.

(12)    The troopers did not know whether Kircher possessed any weapons on his person or within his reach inside the vehicle. Ex. 5, Trial Trans. 50:2-4, 53:13-19.

28

(13)   The troopers believed Kircher was drunk or on bath salts Ex. 4, Miller
       Dep. 31:21-23; 1010:10-11; 119:13. *See also* Ex. 7, Martz Dec.,
       Attach. A, MVR 33:48 ("I'm trying but he's drunk.").

Even after Trooper Farabaugh broke out the passenger window of Kircher's vehicle and deployed the Taser in probe mode, Kircher did not comply with their commands and indicated his continued resistance by shouting, "Back off me. Get away from me. Back off me. Back off me." Ex. 3, Farabaugh Dep. 67: 2-3; Ex. 4, Miller Dep. 44:4-6; Ex. 5, Trial Trans. 51:19-20; Ex. 7, Martz Dec., Attach. A, MVR 27:43. The troopers struggled with Kircher still in the drivers' seat for approximately fourteen minutes. Ex. 7, Martz Dec., Attach. A, MVR 26:23-39:09; Ex. 8, Incident Report pg. 4. During that time, the troopers still did not know whether Kircher possessed any weapons or if weapons were within his reach inside the vehicle. Ex. 5, Trial Trans. 50:2-4, 53:13-19, 53:25-54:3; Ex. 7, Martz Dec., Attach. A, MVR 34:20. Trooper Miller also broke out the drivers' window and was eventually able to get the driver's door open. Ex. 4, Miller Dep. 43:24-44:1; Ex. 7, Martz Dec., Attach. A, MVR 27:19.

During the struggle, Trooper Miller punched Kircher on his hands, trying to use pain compliance to get him to release the steering wheel and get him out of the car. Ex. 4, Miller Dep. 78:18-79:21. Just when the troopers would get one of Kircher's hands pried off the steering wheel, Kircher would put the other hand

back on and continued blocking the troopers from extracting him. Ex. 4, Miller Dep. 79:2-23.

Over the span of fourteen minutes, Trooper Miller deployed his Taser ten times, twice in the probe mode and eight times in the drive stun mode. Ex. 4, Miller Dep. 122:20-23; deposition exhibit, Miller 1 - Taser Use Report for Trooper Dennis Miller. Corporal Farabaugh deployed his Taser seven times, twice in probe mode and five times in drive stun[5] mode. Ex. 3, Farabaugh Dep. 55:23; 82:14-16; Ex. 4, Miller Dep., deposition exhibit Miller 2 - Taser Use Report for Corporal Eric Farabaugh. Kircher was warned that he would be Tased if he did not comply, but he still ignored commands. Ex. 7, Martz Dec., Attach. A, MVR 32:01.

Once Kircher was finally removed from the vehicle, he was handcuffed and transported to Elk County Regional for treatment. Ex. 8, Incident Report pg. 4; Ex. 10, Mall Dep. 40:3-6. Subsequently, Kircher was convicted by a jury of resisting arrest and fleeing and eluding. Ex. 5, Trial Trans. 144:20-25-145:1; Ex. 11, Criminal Docket.

At the time Corporal Farabaugh initially deployed his Taser, Kircher had been fleeing from the troopers for approximately twenty-three minutes. Ex. 7, Martz Dec., Attach. A, MVR 26:36. Kircher even tried to flee again after his

---

[5] When the Taser is activated in drive stun mode, no probes are fired. The Taser is touched against a subject's body. Ex. 3, Farabaugh Dep. 55:10-16. In stun mode, the only area of the subject that is affected by the Taser is the area touched by the Taser. Ex. 4, Miller Dep. 66:6-12.

vehicle was pinned against the embankment, and was indicating continued non-compliance physically and verbally. In entering the vehicle, the troopers were cognizant of potential dangers on Kircher's person or within his reach and needed to gain control of the situation as quickly as possible. Thus, they applied non-deadly force in the form of a Taser, a tool which they had been trained to use to either incapacitate a suspect or administer pain to gain compliance. Ex. 4, Miller Dep. 25:12.

Under these circumstances, the amount of force applied by each trooper was proportional to the resistance from Kircher and the perceived threat, and was therefore reasonable. *See Brown v. Cwynar*, 484 Fed. App'x 676, 680 (3d Cir 2012) (Drive stun to 73-year old suspect's back was reasonable where (1) the suspect had previously been fighting with a store clerk, (2) the suspect had been scuffling with police, (3) the suspect had already been Tased once but continued to act uncooperatively, and (4) the suspect was lying on the ground, refusing to release his hands from under his body.). *See also Wisneski v. Denning*, No. 12-864, 2014 WL 1758118 (W.D. Pa. April 30, 2014) (The court found force was reasonable under the following circumstances: A Taser was used against a motorist in the stun mode on his leg while he was seated in his car, allegedly reaching towards the ignition. He allegedly slapped the officer in "self-defense" after this, telling him to "get off" him, then he reached for the gear shift and the officer

31

stunned him again. The motorist then drove away while the officer's arms, shoulders, and head were still in the car. The officer was able to extricate herself. After a chase, the motorist again refused to exit the car voluntarily, and he slapped, smacked, and grabbed the officers' hands and arms as they tried to get him out of the vehicle and a Taser was again used on him in the stun mode before he was removed from his vehicle. The motorist was convicted of DUI, escape, fleeing or attempting to flee an officer, resisting arrest, and recklessly endangering another person.); *Gorman v. Warwick Tp.*, No. 10-CV-6760, 2012 WL 1439076 at *5 (E.D.Pa. April 26, 2012) (Multiple tasings in stun mode were reasonable after repeated entreaties and warnings by the officers and the arrestee's continued verbal and physical refusals to obey the officers' commands.).

To the extent Kircher claims the troopers' force should be deemed excessive because of the injury Kircher sustained (allegedly Rhabdomyolysis),[6] his injury should not be considered as part of the Court's objective analysis because there is no evidence in the record that the troopers had any prior knowledge or training that multiple Taser exposures to an individual could cause Rhabdomyolysis.

---

[6] Defendants vehemently dispute that their Taser deployments were the proximate cause of the Rhabdomyolysis, which Kircher was treated for at the hospital. If necessary, Defendants will prove at trial that the injuries Kircher complained of were the result of other intervening conditions, including preexisting physical and psychological conditions and that the injuries complained of cannot be caused by the Taser in the manner it was used in this case.

Accordingly, based upon the record evidence, each trooper's use of his Taser was objectively reasonable under the circumstances. Therefore, both troopers are entitled to judgment as a matter of law on Kircher's excessive force claims.

### III. CORPORAL FARABAUGH AND TROOPER MILLER ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THERE IS NO CLEARLY ESTABLISHED LAW BARRING AN OFFICER FROM USING HIS TASER A SPECIFIC NUMBER OF TIMES TO GAIN A SUBJECT'S COMPLIANCE.

"Qualified immunity is an affirmative defense available to government officials sued in their personal capacities." *Brown*, 484 Fed. App'x at 680. For qualified immunity to attach, an official must demonstrate his conduct was objectively reasonable. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). There are two prongs to this inquiry: first, whether the plaintiff's constitutional or statutory rights were in fact violated; second, whether it would have been clear to a reasonable officer that the conduct was unlawful in light of "clearly established" law. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). If an official can show at least one prong was not met, immunity attaches. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, even assuming the force was excessive (which it was not), qualified immunity should attach because not every reasonable official in these troopers' shoes would have understood "beyond debate" that a trooper's several uses of his Taser to affect the arrest of a non-compliant individual constituted excessive force.

33

*Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011). Multiple courts, including courts within this Circuit, have approved the use of Tasers to subdue individuals who resist arrest or refuse to comply with police officers. *See Brown*, 484 Fed. App'x at 680; *Bello v. Lebanon City Police Dep't*, No. 1:11-CV-0639, 2013 WL 53981 at *7 (M.D. Pa. Jan. 3, 2013) (Finding officers were entitled to qualified immunity because not every reasonable officer would find "beyond debate" that using the Taser in this case was excessive force, as the suspect was actively resisting.). *See also Draper v. Reynolds,* 369 F.3d 1270, 1278 (11th Cir. 2004) (holding the use of a Taser to "effectuate [an] arrest" was reasonable when the individual was "hostile, belligerent, and uncooperative."); *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993) (approving the use of a stun gun to overcome a suspect's resistance of arrest); *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992) (holding it was reasonable to use a Taser to subdue a paranoid schizophrenic who locked himself in an apartment and disobeyed police orders to open the door and drop his weapons); *cf. Giles v. Kearney*, 571 F.3d 318, 329 (3d Cir. 2009) (holding the use of a capstun was "proportionate" when a prison inmate "repeatedly refus[ed] to obey orders"). *But see Boyden v. Twp. of Upper Darby*, 5 F.Supp.3d 731, 741 (E.D.Pa. 2014) (Denying qualified immunity where the arrestee was handcuffed at the time of the tasing and charges of resisting arrest were dropped.); *Brown v. Burghart*, No. 10-3374, 2012 WL 1900603 at **11 (E.D.Pa. May 25,

34

2012) (Officers not entitled to qualified immunity where Taser ignited spilled gasoline and officers were trained not to use Tasers in flammable situations.); *Nykiel v. Borough of Sharpsburg*, 778 F. Supp. 2d 573, 588 (W.D. Pa. 2011) (Officers who used a Taser in stun mode against a suspect believed to be under the influence of cocaine were not entitled to qualified immunity because the four officers present were sufficient to restrain the suspect without use of the Taser. Additionally, while the officers claimed that they had used the Taser twice, 5 to 7 more Taser marks were found on the *dead* body of the suspect.).

No decision by the Supreme Court, this Circuit, or by a majority of other federal circuits has foreclosed the use of multiple Taser applications when a suspect continues to physically and verbally resist arrest. *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) (holding qualified immunity attached when, in 2007, an officer Tased a man who resisted arrest by crawling and thrashing because "no precedent. . . ha[d] staked out a bright line."). Furthermore, the troopers' training did not instruct them on any dangers of multiple applications of a Taser on a suspect. Ex. 3, Farabaugh Dep. 20:23-21:3, 21:16-21, 31:24-31:2; Ex. 4, Miller Dep. 21:18-23; Ex. 10, Mall Dep. 35:1-4, 71:24-72:5. Accordingly, at the time of this incident, a reasonable officer in Corporal Farabaugh's shoes would not have perceived federal law to preclude deploying his Taser seven times to effectuate Kircher's arrest. *Brown*, 484 Fed. App'x at 681. Similarly, a reasonable officer in

35

Trooper Miller's shoes would not have perceived federal law to preclude deploying his Taser ten times to effectuate Kircher's arrest. *Id*. Therefore, the troopers are entitled to qualified immunity on the excessive force claim and judgment should be entered in their favor.

## IV.   SOVEREIGN IMMUNITY BARS THE STATE LAW CLAIMS RAISED IN COUNTS IV AND V.

In addition to the Constitutional violations alleged within the Complaint, Kircher alleges claims of excessive force under the Pennsylvania Constitution and assault and battery against the troopers.

First, it is important to note that there is no separate cause of action for monetary damages for the use of excessive force in violation of Article I, Section 8 of the Pennsylvania Constitution. *Jones v. City of Phila.*, 890 A.2d 1188, 1216 (Pa. Commw. 2006).Therefore, Kircher's Count IV claim fails as a matter of law.

Second, the PSP and its employees are immune from state law claims by virtue of state sovereign immunity. Section 2310 of Title I of the Pennsylvania Consolidated Statutes provides that:

> [p]ursuant to Section 11 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that *the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity* and remain immune from suit except as the General Assembly shall specifically waive the immunity.

1 Pa.C.S. § 2310 (emphasis added). *See also Yakowicz v. McDermott*, 548 A.2d 1330 (Pa. Commw. 1988), appeal denied, 565 A.2d 1168 (Pa. 1989); *Moore v. Cuyler*, 538 A.2d 111 (Pa. Commw. 1988), appeal dismissed, 567 A.2d 1040 (Pa. 1990); *La Frankie v. Miklich*, 618 A.2d 1145 (Pa. Commw. 1992).

Conduct of an employee is within the scope of employment if: (1) it is of a kind that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is calculated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, it is not unexpected by the employer. *Brumfield v. Sanders,* 232 F.3d 376, 380 (3d Cir.2000), *citing* Restatement (Second) Agency § 228.

There is no dispute that. Doc. 1, Complaint, ¶5. Accordingly, the troopers are entitled to state sovereign immunity for the state law claims brought against them.

It is undisputed that Corporal Farabaugh and Trooper Miller were acting within the scope of their employment working and engaged in their official duties at all times relevant to this case. Doc. 1, Complaint, ¶¶3-5. As explained above, each trooper acted and reacted to the circumstances confronting him and always with the intent to affect Kircher's arrest. Their uses of force to restrain, effect arrest, and continue control over Kircher were all expected parts of their job. Since

the troopers were acting within the scope of their employment, they enjoy state sovereign immunity from claims arising under state law. 1 Pa.C.S. § 2310.

Finally, the troopers would be remiss not to point out that Kircher's Count V claims of assault and battery are intentional torts but a plaintiff cannot recover against a Commonwealth party acting in their official capacity for claims based upon intentional torts. *See Pickering v. Sacavage*, 642 A.2d 555 (Pa. Commw. 1994) (A trooper acting in his official capacity was entitled to sovereign immunity from claim of intentional infliction of emotional distress); *See also LaFrankie*, 618 A.2d at 1145 (The Commonwealth Court, sitting *en banc*, held that a trooper acting within the scope of his official duties was protected by sovereign immunity from the imposition of liability for intentional tort claims).

Since Kircher's claims of excessive force under the Pennsylvania Constitution and the intentional torts of assault and battery are barred by state sovereign immunity, the Defendant troopers are entitled to judgment as a matter of law.

**CONCLUSION**

Wherefore, for the foregoing reasons, Defendants are entitled to judgment in their favor on all counts of the Complaint.

**Respectfully submitted,**

**KATHLEEN G. KANE**
**Attorney General**

**By:**   _s/ Keli M. Neary_
**KELI M. NEARY**
**Deputy Attorney General**
**Attorney ID 205178**

**JESSICA S. DAVIS**
**Deputy Attorney General**
**Attorney ID 94560**

**Office of Attorney General**                    **KENNETH L. JOEL**
**15th Floor, Strawberry Square**      **Chief Deputy Attorney General**
**Harrisburg, PA 17120**                    **Chief, Civil Litigation Section**
**Phone: (717) 787-1180**
**Fax:    (717) 772-4526**
**kneary@attorneygeneral.gov**

**Date: December 1, 2014**                    **Counsel for Defendants**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PAUL KIRCHER, III,** | : |
| | :  **Civil Case No. 4:13-CV-02143** |
| **Plaintiff** | : |
| | : |
| **v.** | : **Judge Matthew W. Brann** |
| | : **Magistrate Judge Thomas M. Blewitt** |
| **PENNSYLVANIA STATE** | : |
| **POLICE, ET AL.,** | : |
| **Defendants** | : **FILED ELECTRONICALLY** |

## <u>CERTIFICATION OF WORD COUNT</u>

I hereby certify that this brief contains 7,529 words within the meaning of Local Rule 7.8(b)(2).  In making this certificate, I have relied on the word count of the word processing system used to prepare the brief.


*/s/ Keli M. Neary*
**KELI M. NEAR**
**Deputy Attorney General**

40

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PAUL KIRCHER, III,                    :
                                      :  Civil Case No. 4:13-CV-02143
              Plaintiff               :
                                      :
        v.                            : Judge Matthew W. Brann
                                      : Magistrate Judge Thomas M. Blewitt
PENNSYLVANIA STATE                    :
POLICE, ET AL.,                       :
              Defendants              : FILED ELECTRONICALLY

## CERTIFICATE OF SERVICE

I, Keli M. Neary, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on DECEMBER 1, 2014, I caused to be served a true and correct copy of the foregoing document titled Brief in support of Defendants' Motion for Summary Judgment by electronic filing to the following:

Daniel E. Cummins, Esquire          I. Michael Luber, Esquire
Foley Cognetti & Cowley             I. Michael Luber, PC
Scranton Electric Building          1760 Market Street, Suite 1100
507 Linden Street, Suite 700        Philadelphia, PA 19103
Scranton, PA 18503                  Telephone: 215-496-1000
Telephone: 570-346-0745             Email: MLUBER@LUBERLAW.Com
Email: dancummins@comcast.net       *Counsel for Plaintiff*
*Counsel for Plaintiff*


                                    /s/ *Keli M. Neary*
                                    **KELI M. NEARY**
                                    **Deputy Attorney General**

41