IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAUL KIRCHER, III                           :
Plaintiff                                   :
                                            :       CIVIL ACTION NO. **4:13-CV2143**
                                            :
         v.                                 :
                                            :       (Judge Brann)
PENNSYLVANIA STATE POLICE,   :       (Magistrate Judge Arbuckle)
TROOPER ERIC FARABOUGH, and  :
TROOPER DENNIS MILLER         :
Defendants                                  :

**REPORT AND RECOMMENDATION**

## I. Introduction

Two State Troopers responding to a call saw a car driving without lights at night on a rural road.   Suspecting a drunk driver, they signaled the car to stop.   It didn't.   After a slow speed chase on dark rural roads and three "PIT" maneuvers,[1] the car finally stopped.   The driver, Paul Kircher, asserts that by forcing his moving car off the road with their police car and then using their Tasers on him a total of 17 times the police used excessive force for a traffic stop.   The police claim the force they used was reasonable and necessary under the circumstances and they are entitled to immunity.   A jury will have to decide.

---

[1]  A PIT maneuver is a "precision immobilization technique where you use the patrol car to try to spin the vehicle out to disorient the driver." (Doc 35, page 6, f.n. 11).

## II. Procedural Background

This §1983 civil rights action was filed on August 13, 2013 (Doc. 1).

Named as Defendants are: The Pennsylvania State Police Department ("PSP");

Trooper Eric Farabough; and Trooper Dennis Miller.   On November 1, 2013,

Defendants jointly filed an Answer to the Complaint with affirmative defenses.

(Doc. 11).   Next, a case management conference was held and the Court issued a

Scheduling Order directing that discovery be concluded by March 1, 2014, and that

dispositive motions be filed by April 1, 2014. (Docs. 12 & 15).   Discovery was

extended to October 17, 2014 and the deadline for dispositive motions was

extended to November 15, 2014 (Doc. 28).

The discovery deadline has now passed in this matter and Defendants timely

filed a Summary Judgment Motion on November 17, 2014, including a statement

of facts, brief and exhibits.  (Docs. 34, 35, 36 & 39).   On December 22, 2014,

Plaintiff filed an answer to the statement of material facts, brief in opposition to the

motion for summary judgment and statement of material facts.  (Docs. 45, 46, 47

& 48).   On January 16, 2015, Defendants filed a reply brief.  (Doc. 52).

Defendants' motion for summary judgment (Doc. 34) is ripe for disposition.

This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and

§1343(a).   Supplemental jurisdiction is appropriate over the pendent state law

claims pursuant to 28 U.S.C. §1367(a) if any of the federal claims remain.

**III. Allegations of the Complaint.**

Plaintiff alleges that on September 14, 2011, Defendants Trooper Farabough and Miller attempted to pull him over for driving without his headlights on. (Doc. 1, p. 2). Plaintiff alleges that he was paranoid of being pulled over on the isolated roadway and proceeded to drive at a slow speed in order to find a well lit area. (Doc. 1, p. 2). Troopers Farabough and Miller cut Plaintiff off and pinned his vehicle against a guardrail. (Doc. 1, p. 2). The Troopers yelled at Plaintiff who was sitting in the car with his hands on the steering wheel. (Doc. 1, pp. 2-3). Plaintiff avers that he did not threaten Trooper Farabough and Miller either verbally or physically. (Doc. 1, p. 3). Plaintiff avers that although he was compliant, the Troopers used their Tasers seventeen (17) times on Plaintiff while he was still in the vehicle. (Doc. 1, p. 3). Plaintiff sustained acute renal failure, acute rhabdomyolysis, abrasions, lacerations and contusions to his face and body, shoulder injury, and injuries to his neck and back. (Doc. 1, p. 3).

Plaintiff was criminally charged as a result of the incident with DUI, Fleeing or Attempting to Elude a Police Officer, Careless Driving, Reckless Driving, Period for Required Lighted Lamps, Resisting Arrest, and Recklessly Endangering another person in the Court of Common Pleas of Cameron County at Criminal Docket CP-12-CR-0000003-2012 (Doc. 35, p. 13). At a jury trial on December 10, 2012, Plaintiff was found guilty of Fleeing or Attempting to Elude a Police Officer,

Careless Driving, Period for Required Lighting Lamps, and Resisting Arrest.  The

Charges of DUI and Aggravated Assault were withdrawn (Doc. 35, p. 13).

Plaintiff claims that Defendants used excessive force during his arrest in

violation of the Fourth Amendment.  Specifically:

**Count I** alleges that PSP failed to develop and enforce proper policies

regarding excessive force and the use of a Taser;

**Count II** alleges that Defendants Farabough and Miller violated the

Plaintiff's Fourth Amendment rights by using excessive force to affect his arrest;

**Court III** alleges that Defendants are responsible for the failure to train on

excessive force and the use of Tasers;

**Count IV** alleges that Defendants Farabough and Miller violated Plaintiff's

right to be free from excessive force under Article I, §8 of the Pennsylvania

Constitution; and,

**Count V** alleges a state law claim of assault and battery against Defendants

Farabough and Miller.

The Plaintiff seeks both compensatory and punitive damages as well as

attorney's fees and costs pursuant to 42 U.S.C. §1988 (Doc. 1, p. 16).

**IV. Legal Standards for the Motion.**

### A. *Motion for Summary Judgment Standard.*

Rule 56 (c) of the Federal Rules of Civil Procedure, provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. Summary judgment is appropriate only when: (1) there are no material facts in dispute; and (2) one party is entitled to judgment as a matter of law. *See Int'l Union, United Mine Workers of Am. v. Racho Trucking Co.*, 897 F.2d 1248, 1252 (3d Cir.1990). A district court may properly grant a motion for summary judgment when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.*" Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Material facts" are those which might affect the outcome of the suit. *Id.*; *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d

Cir.1996) (citations omitted). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show "that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial." *Jalil v. Avdel Corp.,* 873 F.2d 701, 706 (3d Cir.1989) (*quoting Chippolini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d. Cir.1987)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate their opponent's claim, but only point out a lack of evidence sufficient to support the opponent's claim. *Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3d Cir.1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains.   *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather, the party must point to specific evidence in the record that creates a genuine issue as to a material fact.  *Celotex*, 477 U.S. at 32; *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir.1999).

### B. Civil Rights §1983 - Standard of Proof.

In a §1983 civil **rights** action, the Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

Further, §1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[2]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).  It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra.* It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a §1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

---

[2]  Plaintiff alleges in his pleading that Defendant Troopers were all employees of PSP and were acting under color of state law.   (Doc. 1, p. 2).   This is sufficient to show that Defendants were state agents.

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.   Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

Applying these standards we turn to the facts of this case.

## V.   Discussion of Disputed Material Facts.

The moving Defendants have filed their Statement of Undisputed Material Facts ("SMF") in support of their Summary Judgment Motion as required.  (Doc. 35).  *See* Local Rule 56.1, M.D. Pa.  Plaintiff has responded to this SMF by filing "Plaintiff's Response to Statement of Material Facts…"(Doc. 45).  Plaintiff also filed a Statement of Facts in support of his opposition to the Summary Judgment Motion.  (Doc. 48).  We will review the disputed material facts herein in the light most favorable to Plaintiff as we are required to do.

Plaintiff was unhappy living at his parent's New Jersey home and decided to visit his cousin in California.  (Doc. 45, ¶ 5).  Plaintiff got off Interstate 80 West in order to possibly find a hotel room or to make a pit stop because he was very tired.  (Doc. 45, ¶ 7).  Kircher was stopped by Troopers Miller and Farabough, at which time he told them that he was lost and needed to get back on a westbound road.  Kircher provided them with all of his credentials (driver's license, registration, and insurance cards) and they sent him on his way.  He recalled that that they either did not give him specific directions or that he misunderstood them and got lost again.

(Doc. 48, ¶ 7).  Realizing he was lost again he pulled over to the side of the road, put on his hazard, side running lights, dimmed his headlights, and tried to find a radio station that would give him some information about his location (Doc. 48, ¶10; Doc 45, ¶ 18).  Nathan Ball, a volunteer assistant fire chief, drove past a vehicle stopped in the opposite direction on Route 120, with no headlights on.  Ball made a U-turn and came up behind Kircher's car.  (Doc. 48, ¶ 81).  When Mr. Ball pulled up next to the car, plaintiff perceived that in the "pitch dark," a car pulled up, a man in a t-shirt exited with his hands up, leading him to believe that he had a weapon, and was impersonating a police officer, thus, he (Kircher) was "spooked." (Doc. 45, ¶ 20).  Kircher drove away and Ball followed, activating his red emergency lights and following Kircher for over two miles. (Doc. 48, ¶ 82).  At that time "he did not know why this person in a t-shirt was acting like a police officer, he was in the middle of nowhere, it was extremely dark, and he was fearful" (Doc. 48, ¶ 12).  The Troopers approached this two car caravan from the opposite direction.  Kircher states that his headlights were on when the Troopers pulled up to his car.  The Troopers say his lights were off.  (Doc. 35, ¶26; Doc 45, ¶ 26).  Kircher disputes that he "fled in reverse" when the Troopers came at him and states that he "rolled away slowly as he was in fear and hoped that backup would arrive or that he would find a lighted parking lot so that the situation would calm down" (Doc 35 & 45, ¶ 27).  Plaintiff further disputes that he "continued to back away" after Trooper Miller told him to stop (Docs 35 & 45, ¶ 28).  Again, he

states that he continued to roll away slowly as he was "in fear and hoped backup would arrive or that he would find a lighted parking lot that the situation would calm down."(Doc 45, ¶28).  Furthermore, Kircher disputes that he "continued fleeing east at approximately twenty miles per hour," and states that he drove slowly at five (5) miles per hour sometimes stopping, as he continued to roll away because he was in fear and was hoping that backup would arrive or that he would find a lighted parking lot so that the situation could calm down.  (Doc 45, ¶ 30).  Kircher further disputes that he was "continuing to flee" or fleeing or that his vehicle was swerving, that he did not "obey" the commands of the Troopers when they used the loudspeaker and that he fled in reverse for approximately twenty-five yards before stopping.  (Doc 45, ¶¶ 30, 31, 35).  Again, he states that he continued to roll away slowly as he was in fear and hoped backup would arrive or that he would find a lighted parking lot and that the situation would calm down.  (Doc 45, ¶¶ 30, 31, 35).  Plaintiff disputes that after the vehicle was stopped that he "continued to try to get out of the car" and states that after his vehicle was "pitted," he did not keep his foot on the gas pedal and he knew his car would not go anywhere.  (Doc. 45, ¶ 37).  Kircher further disputes that he ignored the commands of the Troopers and states that he was in fear for his life as they had their guns drawn and it was a heated and escalated and he did not want to get out of the car and have the Troopers think that he was reaching for anything.  (Doc. 45, ¶ 38).  Plaintiff did not intend to use his vehicle as a deadly weapon.  (Doc. 45, ¶ 39).

Plaintiff disputes that he "failed to comply with commands to exit the vehicle" and states that he was fearful and scared and that after they began tasing him he could not move.  (Doc. 45, ¶ 42).  Plaintiff disputes that he was still trying to get away after Corporal Farabough deployed the Taser.  (Doc. 45, ¶ 43).  Plaintiff further disputes that he was stepping on the accelerator trying to break his car free from the patrol car.  (Doc. 45, ¶ 44).  Plaintiff states that although he did not exit the vehicle and he had to use his hands to block glass from hitting him and he kept his hands on the steering wheel, he repeatedly asked them what he had done and he said that he would get out of the car, but they repeatedly tased him and he could not move.  (Doc. 45, ¶ 46).  Plaintiff was not trying to reach into his pocket and he did not have any weapons in his car or on his person.  (Doc. 45, ¶ ¶ 47, 48).  Kircher disputes Defendants allegations that he "continued to resist" or that he was resisting at any time.  (Doc. 45, ¶ 49).  Kircher also disputes that he was warned on each occasion that a Taser would be used and that he "ignored commands to get out of the car."  (Doc. 45, ¶ 50).  Plaintiff disputes that he resisted every attempt to get him out of the vehicle.  (Doc. 45, ¶ 54).  Plaintiff again disputes that he "had been fleeing from the troopers" and that he  "failed to exit the vehicle."  (Doc. 45, ¶ 60).  Kircher disputes that he was transported to Elk County Regional "once he was in custody" as he was transported to the hospital at 5:47 A.M. almost two hours after he was stopped (Doc. 45, ¶ 62).

Kircher states that the videotape footage of the events show that there were possible Taser sounds after he was out of his vehicle.  (Doc. 45, ¶ 61).  Kircher disputes the fact that the Troopers used "non-deadly force" on Plaintiff.  (Doc. 45, ¶ 66).

## VI.  The Summary Judgment Motion.

### A. Counts I & III - Summary Judgment unopposed.

In their motion for summary judgment, Defendants moved for summary judgment on Plaintiff's Count I (against PSP for failure to train and supervise) and Count III (against all Defendants for failure to establish and enforce proper policies).  Plaintiff indicates in his response to the motion that he does not oppose a grant of summary judgment on Counts I & III (Doc. 46, p 21).  Thus, I will recommend granting Defendants' motion on these two claims without further discussion.

### B.  Count II: Fourth Amendment Excessive Force Claim under §1983.

The standard governing excessive force claims in the course of an arrest, investigatory stop or other type of seizure were specified by the United States Supreme Court in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989).  Pursuant to *Graham*, excessive force claims are analyzed under the Fourth Amendment's objective reasonableness standard.  Plaintiff's claim alleging

excessive force utilized during his arrest falls under the Fourth Amendment, which protects against unreasonable seizures.

"A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable. *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002); *Rivas v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004). A seizure of the plaintiff occurs "[w]henever an officer restrains the freedom of [the plaintiff] to walk away." *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694 (1985). In the present case, as discussed, the evidence shows that a seizure of the Plaintiff occurred. Thus, the issue in our case is whether the seizure of Kircher effected by the Troopers "tasing" him 17 times was unreasonable.

The Third Circuit in *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) stated:

> An excessive force claim must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody the allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are often tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865. The inquiry turns on "objective reasonableness," meaning that the standard is whether the police officer's "actions [were] 'objectively reasonable' in light of the facts and circumstances facing the officer, regardless of the officer's intent or motivation. *Id.* at 397, 109 S.Ct. 1865.

> Factors to consider in making a determination of reasonableness include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Additional factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed,

and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir.1997). The reasonableness of the use of force is normally an issue for the jury. *See Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir.1999).

> *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004)

Sr. Judge Cohill recently summarized the standard this way:

> "[R]easonableness under the Fourth Amendment should frequently remain a question for the jury." *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir.1999).   Summary judgment may be possible, however, if the officer's use of force was objectively reasonable under the circumstances after all factual disputes have been resolved in favor of the plaintiff. *Id.* The use of a Taser during an arrest, especially when the suspect is resisting arrest, may be reasonable. *See Brown v. Cwynar*, 484 Fed. Appx. 676, 681 (3d Cir.2012) (noting how the use of Taser on a suspect resisting arrest is not inherently "excessive force"). Nonetheless, "the deployment of a taser" … remains a relatively serious use of force." *Ickes v. Borough of Bedford,* 807 F.Supp.2d 306, 323 (W.D.Pa. 2011)."

> *Scutella v. Erie Bureau of Police*, 2014 WL 5425626 at *7 (W.D.Pa. 2014).

In the context of a §1983 claim, as we are presented with in this case, there is a three-part test to be applied in determining the reasonableness of the force which was used.  The following factors are to be considered:

> 1.  "the severity of the crime at issue;"
>
> 2.  "whether the suspect poses an immediate threat to the safety of the officers or others;" and
>
> 3.  "whether [the arrestee] is actively resisting arrest or attempting to evade arrest by flight. "

*Graham,* 490 U.S. at 396, 109 S.Ct. at 1867.

The *Rivas* Court also stated that:

> Additional factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must      contend    at    one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).   The reasonableness of the use of force is normally an issue for the jury. *See Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999).   While some courts "freeze the time frame" and consider only the facts and circumstances at the precise moment that excessive force is applied, other courts, including this one, have considered all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force. *See, e.g., Abraham*, 183 F.3d at 291. *Rivas*, 365 F.3d at 198.

Careful attention to the facts and circumstances of each particular case must be given, including the aforementioned three factors. *Graham,* 490 U.S. at 396. As we have discussed above, there are material factual disputes in this case concerning the Plaintiff's behavior prior to and during the arrest at issue, as well as the amount of resistance he was presenting when he was tased. We need not reemphasize these facts since they are fully discussed elsewhere in this report. In viewing the facts in a light most favorable to the Plaintiff, as we are required to do when presented with a summary judgment motion, we find that there are disputed issues of material fact with respect to the Plaintiff's Fourth Amendment excessive force claim. Therefore, we shall recommend that Defendants' Summary Judgment Motion with respect to the §1983 claim be denied.

**C.      *Count II: Qualified Immunity Defense*.**

Corporal Farabough and Trooper Miller argue that they are entitled to qualified immunity because there is no clearly established law barring an officer from using his Taser a specific number of times to gain a subject's compliance. (Doc. 39, pp. 33-36).  The common law privilege of qualified immunity protects a public official who has undertaken a discretionary act from suit "to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'"  *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)); *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Officers performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *See Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002) (citation and internal quotation marks omitted).  "[A] right is 'clearly established' when the contours of the right are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *McGreevy v. Stroup*, 413 F.3d 359, 366 (3d Cir.2005) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001)).

### D.    Evidence regarding the use of the Tasers.

The Taser Log for Trooper Miller reflects the following use by him of Tasers on Kircher: Taser at 3:40:18 for 5 seconds; at 3:40:45 for 5 seconds; at 3:40:54 for 5 seconds; at 3:43:21 for 5 seconds; at 3:43:27 for 5 seconds; at 3:43:37 for 7 seconds: at 3:43:41 for 3 seconds; at 3:43:53 for 10 seconds; at 3:45:01 for 2 seconds; and at 3:45:20 for 5 seconds, totaling ten deployments of the Taser, for a total exposure time of 52 seconds. (Doc. 48, ¶89, Ex. Plaintiff 7, Miller Taser log).

The Taser Log for Corporal Farabough reflects the following use by him of Tasers on Kircher: Taser at 3:37:11 for 5 seconds; at 3:37:20 for 5 seconds; at 3:39:24 for 4 seconds; at 3:42:30 for 5 seconds; at 3:42:39 for 5 seconds; at 3:42:49 for 5 seconds, and at 3:43:00 for 5 seconds, totaling seven deployments of the Taser, for a total exposure time of 34 seconds, the total for both troopers being seventeen deployments of the Taser for a total exposure time of 86 seconds.  (Doc. 48, ¶90, Ex. Plaintiff 8, Farabough Taser log).

The General Investigation Report IAD#11, pages 11-15, setting forth the content of the police videotape (Ex. 7, Martz Dec.,Attach. A, MVR) states the following chronology:

> at 3:27:32 hours, Farabaugh smashes out the passenger side window of
> Kircher's vehicle
> at 3:27:45 hours, Farabaugh deploys his Taser

at 3:28:26 hours, Miller "smashes out" the driver's side window; and while
    ordering Kircher out of the car, Kircher responds, "back off and I
    will"
at 3:29:06 hours, Miller removed the keys from Kircher's vehicle
at 3:30:00 hours, a taser deployment is heard
at 3:30:35 hours, additional taser action is heard
at 3:30:50 hours, taser action can be heard between 3:32:16 and 3:33:14
    hours, taser action can be heard
at 3:34:50 hours, taser action can be heard
at 3:39:34 hours, Kircher is out of the vehicle
at 3:46:20, hours, emergency medical service is requested
(Doc. 45, ¶ 91, Ex. Plaintiff 9, General Investigation Report – IAD #11, pages 11-
15).

    R. Paul McCauley, Ph.D., FACFE, a Professor Emeritus of Criminology and

former Chairman of the Department of Criminology at Indiana University of

Pennsylvania, spent thirty years as a municipal police officer, engaged in the arrest,

handcuffing, transporting and processing of individuals; was a state certified police

instructor, teaching policies and procedures of police operations; has published

extensively regarding police operations and policies, holds the designation of

Fellow American College of Forensic Examiners; has been qualified as a police

expert in state and federal courts in more than thirty states, including each of the

United States District Courts in Pennsylvania, and in 1984, he was one of two

finalists interviewed for the position of Commissioner of the Pennsylvania State

Police.  (Doc. 45, ¶ 92, Ex. Plaintiff 1, McCauley report).

    Dr. McCauley issued a report based upon generally accepted methodologies,

providing his professional opinions, assessing compliance with and deviations

from accepted police operational and managerial practices. He formed his opinions

after reviewing all of the evidence, based upon alternative, legitimate factual disputes, noting that it is not his role to determine credibility. (Doc. 45, ¶ 93, Ex. Plaintiff 1, McCauley report).  He noted that rather than coordinating their efforts, each trooper acted independently, the result being that in the span of eight minutes, there were sixteen Taser applications (according to the Taser data download reports) for a total duration of eighty-three seconds, pointing out that the Pennsylvania State Police's policies and accepted practices recognize and establish a fifteen second threshold, which was exceed by more than fivefold, which Dr. McCauley characterized as "outrageous". (Doc. 45, ¶ 103, Ex. Plaintiff 1, McCauley report).

Mark Myers, M.D., a cardiologist, issued a report following his review of Kircher's medical records. He opined that Kircher's rhabdomyolosis and acute renal failure are attributable to his being tasered numerous times for a total time of eighty-four seconds. (Doc. 48, ¶87, Ex. Plaintiff 4, Myers report))

Eric Fine, M.D., a psychiatrist, issued a report following his examination of Kircher, in which he opined that as a result of the Defendants' actions, Kircher developed a very severe, chronic post-traumatic stress disorder, which is likely permanent; that his prognosis is extremely poor, and that he is totally and permanently disabled. (Doc. 48, ¶88, Ex. Plaintiff 2, Fine report).

Thus, Kircher has presented evidence, which if believed, establishes that the use of two tasers was excessive, did significant physical damage, greatly exceeded

the PSP guidelines for taser usage, and was fairly characterized as "outrageous."

The use of tasers as an alternative to more deadly force is admittedly lawful.

Kircher has presented evidence, which if believed, establishes the Trooper's use in

his case exceeded any objectively reasonable belief that their use of force was

proper.  I find that the evidence viewed favorably to the plaintiff shows an abuse of

the use of force that a reasonable officer would understand violated Kircher's right

to be free from excessive use of force.   For this reason I recommend that

Defendants motion for summary judgment based on qualified immunity should be

denied because factual disputes remain about whether a reasonable person would

know that the Trooper's conduct exceeded what was reasonable.  *See Garey v.*

*Borough of Quakertown*, 2013 WL 3305222 *6 (E.D.Pa., July 1, 2013).  *See also*

*Shultz v. Carlisle Police Dep't*, 706 F.Supp.2d 613, 624 (M.D. Pa. 2010).

### E.     Counts IV & V: Pendent State Law Claims.

The Plaintiff's Complaint also contains pendent state law claims for assault

and battery (Count V) and excessive force claims arising under the Pennsylvania

Constitution (Count IV).  Defendants move for summary judgment on all of the

state law claims arguing that sovereign immunity bars the state law claims.  As

noted above, we have recommended that Summary Judgment on Plaintiff's Fourth

Amendment excessive force claim be denied.  I recommend that Defendants'

motion for summary judgment regarding Plaintiff's excessive force claim arising

under the Pennsylvania Constitution also be denied as it arises under the same facts and circumstances as the federal claims.

Under Pennsylvania Law, an assault occurs when an actor intends to cause imminent apprehension of a harmful or offensive bodily contact.  Restatement Second of Torts, § 21; *Sides v. Cleand*, 648 A.2d 793 (Pa. Super. 1994).  Battery is defined at law as a harmful or offensive contact.  *Levenson v. Souser*, 384 Pa. Super 132, 557 A.2d1081 (1989).  Unless privileged, the actions of the Troopers clearly constitute assault and battery.

I cannot find that Defendants actions having occurred in the course of employment are dispositive of the sovereign immunity issue as Defendants argue in their supporting brief.  While they were clearly "on duty," genuine issues of material fact remain whether or not Defendants were actually acting within the scope of their employment when the assault and battery occurred.  The determination of these facts must be made by the jury.  *See Strothers v. Nassan*, 2009 WL 976604, at *8 (W.D. Pa. April 9, 2009) (The question of whether an individual was acting in the scope of employment can be decided as a matter of law by a court only when the facts and inferences to be drawn from them are not in dispute; it is a question of fact for the jury).

As mentioned, there are factual questions presented by the evidence, whether a reasonable officer would have used the Taser against Plaintiff in the

manner that these officer did.  Accordingly, I will recommend that Defendants'
Motion for Summary Judgment with respect to all of the Plaintiff's pendent state
law claims be denied.

## VII.  Recommendation.

Accordingly, I recommend that Defendants' Summary Judgment Motion
**(Doc. 34)** be **GRANTED** with respect to Plaintiff's **Count I & III** and **DENIED**
with respect to **COUNTS II, IV, & V**.

*/s/ William I. Arbuckle III*
William I. Arbuckle III
United States Magistrate Judge

**Dated: December 29, 2015**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAUL KIRCHER, III                          :
Plaintiff                                  :
                                           :     CIVIL ACTION NO. **4:13-CV2143**
                v.                         :
                                           :     (Judge Brann)
PENNSYLVANIA STATE POLICE,   :     (Magistrate Judge Arbuckle)
TROOPER ERIC FARABOUGH, and  :
TROOPER DENNIS MILLER          :
Defendants                                 :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation dated December 29, 2015.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10)days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*/s/ **William I. Arbuckle III***
William I. Arbuckle III
United States Magistrate Judge

**Dated: December 29, 2015**